IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SUSAN HURST, on behalf of herself : 
and all others similarly situated, : 
                                : 
                                : 
     Plaintiff, : 
                                :    Civil Action File No. 
v. : 
                                :    1:15-cv-01844-TWT 
MONITRONICS INTERNATIONAL, INC. : 
                                :    ***Jury Trial Demanded*** 
     Defendant. : 
_____ :

**BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR TO STAY PROCEEDINGS AND
COMPEL ARBITRATION**

COMES NOW PLAINTIFF SUSAN HURST ["Hurst"] and files this

Response to Defendant Monitronics International, Inc's ["Monitronics"] Motion to

Dismiss or to Stay Proceedings and Compel Arbitration.   In its motion, Defendant

asks this court to dismiss this case on its merits, pursuant to Fed. R. Civ. P.

12(b)(6), on the grounds that an alarm monitoring agreement entered into between

Plaintiff and Spot Security contains a contractual limitations of 1 year and the

Plaintiff's Complaint contains allegations of calls going back 4 years.  Monitronics

then asks, "assuming *arguendo* that the Complaint is not time-barred," that this

court compel arbitration pursuant to the same agreement.

As detailed herein, Monitronics' motion to dismiss this case on its merits should be denied because 1) it relies on an alarm monitoring agreement that was neither attached to nor integral to the complaint, 2) the contractual statute limitations provision is not enforceable, and 3) the allegation that Monitronics made calls "in the four year period preceding the filing of this action" necessarily encompasses that time period which falls within the one year limitations of the filing of the Complaint.  In fact, Ms. Hurst's declaration, which should not be necessary in responding to a Motion to Dismiss, testifies that she has received prerecorded telephone calls from Monitronics after May 4, 2014, and within one year preceding the date Mr. Hurst initially filed her complaint.

Monitronics alternative motion to compel arbitration should be denied because the clause is unconscionable under Oregon law and Monitronics' has waived its rights to arbitrate to the prejudice of the plaintiff by seeking a ruling on the merits first and in seeking to have this case transferred to the Northern District of West Virginia for litigation and stayed pending the decision of two Supreme Court decisions regarding Article III Federal jurisdiction that would have no substantive effect on the pending litigation or the arbitration of plaintiff's claims.

# I.     Fed. R. Civ. P. 12(b)(6) Standard of Review.[1]

In evaluating a motion to dismiss, "we accept the allegations in the complaint as true while construing them in the light most favorable to the Plaintiff... A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1240 (11th Cir. 2012)(internal citations omitted).  Earlier this year, the Eleventh Circuit explained Rule 8(a)'s pleading standard as follows:

> Federal Rule of Civil Procedure 8(a)(2) "simply requires that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' This requirement means the complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting FED.R.CIV.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Moreover, the United States Supreme Court has rejected a heightened pleading standard in federal court, except where such a requirement is specifically delineated by the federal rules. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). The Supreme Court has explained

---

[1] Monitronics also styles its motion as a Rule 12(b)(1) motion to dismiss for want of subject matter jurisdiction.  Plaintiff assumes this is based upon Monitronics' alternative argument that this case should be compelled to arbitration.  To the extent Monitronics is arguing this Court lacks subject matter jurisdiction for the reasons it articulated in the Northern District of West Virginia where it is also seeking to have this case transferred, *See Doc. 2-2*, this court could consider neither the merits of the motion to dismiss nor the alternative request to compel arbitration if it indeed lacked subject matter jurisdiction under Article III. *Vaden v. Discover Bank*, 556 U.S. 49 (2009). Rather, it would remand to the State Court of Cobb County as "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute. *Asarco Inc. v. Kadish*, 490 US 605, 617 (1989).

that, permitting a heightened pleading standard would otherwise conflict with Federal Rule of Civil Procedure 8(a)'s "simplified pleading standard[, which] applies to all civil actions, with limited exceptions.'" *Id.* Thus, under "the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514, 122 S.Ct. at 998 (alteration in original) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

*Palm Beach Golf Center-Boca*, *Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015).[2]

## II.    Statement of Facts.

On September 19, 2011, Plaintiff entered into two agreements with Spot Security, Inc. in Portland, Oregon to install a home security alarm and provide monitoring services for her then home in Oregon.  *Hurst Decl,* ¶ 5.  When Plaintiff moved from her home in Oregon to eventually settle in Cobb County, Georgia, she no longer could use alarm monitoring services under the old agreement; however, she continued to pay for the services despite the fact that she was not receiving them. *Id.* at ¶¶ 15-16.   Monitronics would blast her cellular telephone with robocalls until her payment monthly was received, despite multiple requests to stop calling. *Id.*at ¶ 17.  Eventually, Plaintiff had to change her cellular telephone number to get the calls to stop. *Id.* at ¶¶ 18-19.  Monitronics' disregard for robocall

---

[2] To the extent Defendant argues that the Eleventh Circuit's decision in *Sarris* conflicts with *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the panel precedent rule requires following the Eleventh Circuit's decision "after the Supreme Court last spoke on the subject" even when a court is convinced that the Eleventh Circuit opinion "is wrong and conflicts with relevant Supreme Court decisions."  *Kenny A. ex rel. Winn v. Perdue*, 532 F. 3d 1209, 1236-42 (11th Cir. 2008) *rev'd on other grounds by Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010).

restrictions is nothing new, as it is also the entity ultimately behind the infamous and annoying home security telemarketing robocalls everyone receives. *See In re Monitronics International Inc. Telephone Consumer Protection Act Litigation*, 988 F. Supp. 2d 1364 (JPML 2013).

On May 4, 2015, Plaintiff filed her Complaint in the State Court of Cobb County, Georgia alleging Monitronics "violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ('TCPA'), by initiating non-emergency telephone calls using an automatic telephone dialing system and/or an artificial or prerecorded voice to cellular telephone numbers without the prior express consent of the subscribers of those cellular telephone numbers." *Doc. 2-1, ¶ 1.* In her complaint, Plaintiff alleged that Monitronics made such calls "[i]n the four year period preceding the filing of this action," which by definition includes the one year period preceding the filing of this action. *Doc. 2-1, ¶ 9.* In fact, Ms. Hurst did receive calls within a year of filing of her Complaint. *Hurst Decl*. at *¶ 20.*

Monitronics 'approach to this lawsuit since the beginning has been inconsistent with an intent to resolve these claims in arbitration. Rather, Monitronics has attempted to game the system at every turn in order to gain advantage. For example, on May 21, 2015, Monitronics removed this case to this Court asserting unequivocally that this court has subject matter jurisdiction. *Doc. 1.* On May 29, 2015, Monitronics filed a Notice of Potential Tag Along Action

seeking to have this action transferred to the Northern District of West Virginia and consolidated with *In re Monitronics International Inc. Telephone Consumer Protection Act Litigation*, wherein that same day it argued that Federal Courts lack subject matter jurisdiction over TCPA claims, citing the Supreme Court's grant of *certiorari* in *Spokeo v. Robbins*, contradicting its notice of removal in this case. *See Doc. 2-2* (West Virginia Motion); JPML 2493, *Doc. 235* (Notice of Potential Tag Along) (attached).  On June 2, 2015, the Clerk of the Judicial Panel on Multidistrict Litigation ("JPML") determined this case was not appropriate for inclusion in the MDL. On June 5, 2015, Defendant again attempted to send this action West Virginia by filing a motion to transfer venue with the multidistrict litigation panel. JPML 2493, *Doc. 237* (attached).

On June 18, 2015, Monitronics filed its motion to dismiss arguing that this case should be dismissed on its merits on contractual limitations grounds.  *Doc. 11-1.*  Monitronics also argues that if, and only if, this court does not rule in its favor on the merits, then it should compel arbitration of Plaintiff's claims.  *Doc. 11-1*, pp. 2, 6, 12.  Although its motion to dismiss unequivocally states "Plaintiff's only cause of action is based on Monitronics' alleged efforts to collect a debt arising from Plaintiff's then-existing customer account[,]" *Id.* at p. 11, a statement which Plaintiff's believes is true, on July 6, 2015, Monitronics told the JPML that the

calls could have been to sales calls rather than debt collection calls. JPML 2493, Doc. 247, P. 3 (attached).

### III. There is no Evidence of an Agreement between the Parties.

Defendant's motion to dismiss essentially seeks, on alternative grounds, to enforce the terms of an alarm monitoring agreement between Plaintiff and Spot Security. *Doc 11*. In order to prevail on a motion to compel arbitration, the moving party must show that there's a valid agreement to arbitrate. *Martin v. Wells Fargo bank, N.A.*, 2013 WL 4077561 (N.D.Cal. May 17, 2013) (denying motion to compel arbitration in TCPA case, where defendant's affidavit did not meet burden of proof). The only evidence in support of Defendant's motion is the Affidavit of David Verret. *Doc. 11-2*. Neither the AMA nor the affidavit provide that Plaintiff ever entered into the agreement with Monitronics International, Inc. *Id.* Rather, Monitronics attempts to invoke Spot Security's agreement with the Plaintiff.

However, the evidence presented by Monitronics is insufficient. Mr. Verret avers that "[t]he AMA was purchased by and assigned to Monitronics on September 30, 2011, pursuant to Paragraph 16 of the AMA." *Id.* at ¶ 6. However, paragraph 16 of the AMA is not an assignment. It is simply a notice that "[c]ompany *may* assign or subcontract all or any portion of this Agreement" and that "[c]ompany *may* assign this Agreement to Monitronics Funding, LP *or*

Monitronics International, Inc."  Generally, only signatories to a contract may [enforce it].  O.C.G.A. § 9-2-20;  *Klay v. All Defendants*, 389 F.3d 1191, 1195-96 (11th Cir. 2004) *quoting In Re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 973 (11th Cir. 2002).  Although there are several exceptions to this general rule as articulated in *MS Dealer Corp. v. Franklin*, 177 F.3d 942 (11th Cir.1999), the only exception argued in this case is the unsubstantiated and conclusory statement that Spot Security assigned the arbitration agreement to Defendant. *Doc. 11-2.*

"An assignment is a contract and, in order to be valid, must possess the same requisites (parties, subject matter, mutual assent, considseration) as any other contract."  *Bank of Cave Spring v. Gold Kist, Inc.*, 173 Ga. App. 679, 680 (1985). An assignment must be in writing, identify both the assignor and assignee, and identify the specific accounts transferred in order for the contractual right to be enforceable by the assignee.  *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6 (2009).  A party may not rely on an affidavit alone without providing the written agreements which could complete the chain of assignments between the assignor and the purported assignee.  *Wirth v. CACH*, 300 Ga. App. 488 (2009).

In the last six years, Georgia courts have repeatedly refused to allow purported assignees to enforce contracts against consumers without providing complete written assignment contracts.  *See Nyankojo* (*supra*); *Wirth* (*supra*); *Arrow Financial Services, LLC v. Wright*, 311 Ga.App. 319, 321-22 (Ga. App.

2011)*; Benson v. Asset Acceptance, LLC,* 310 Ga. App. 1 (2011); *Green v. Cavalry Portfolio Services, LLC*, 305 Ga. App. 843 (2010);  *Hutto v. CACV of Colorado*, 308 Ga. App. 469 (2011).  *See also Phillips v. Selecto Scientific*, 308 Ga. App. 412, 413-14 (2011) (refusing to enforce assignment not in writing); *In Re UPL Advisory Opinion 2002-1*, 277 Ga. 521 (2004) (instructing trial courts to "closely examine the interests conveyed by a purported transfer" when a party asserts itself to be an assignee).

In *Green v. Cavalry Portfolio Services, LLC*, the court held that Cavalry could not enforce a contract because "nothing in the record shows an assignment of the contract rights from Union Acceptance Corporation to Union Acceptance Company, LLC."  305 Ga. App. 843 (2010); *See also Benson v. Asset Acceptance, LLC,* 310 Ga. App. 1 (2011) (no evidence of assignment between Citibank USA, N.A. and Citibank (South Dakota), N.A.); *Hutto v. CACV of Colorado*, 308 Ga. App. 469 (2011) (no evidence of assignment between Chase Manhattan Bank and JP Morgan Chase & Co.).  In this case, there is no assignment, and the AMA simply states that the contract *may* be assigned to a subcontractor, which *may* include either Defendant *or* Monitronics Funding, LP.

In *Wirth*, *Nyankojo*, and *Hutto*, the Georgia Court of Appeals refused to allow purported assignees to rely on affidavit testimony to enforce contractual rights against a consumer without proving valid written assignments which

identified the consumer's specific account number as part of the assignment. *Wirth v. CACH*, 300 Ga. App. 488 (2009); *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6 (2009); *Hutto v. CACV of Colorado*, 308 Ga. App. 469 (2011). In *Benson v. Asset Acceptance, LLC*, the Georgia Court of Appeals reversed the denial of summary judgment in favor of the consumer because the purported assignor failed to prove a valid chain of written assignments. 310 Ga. App. 1 (2011).

Just as in *Green*, Monitronics must prove a valid written assignment of Plaintiff's contract with Spot Security in order to enforce its terms. For these reasons, Monitronics cannot enforce Spot Security's contractual rights without submitting the written assignment contracts in compliance with the standards set forth in *Nyankojo* (*supra*) and its progeny.

## IV. The Alleged Arbitration Clause Is Nonsensical And Unconscionable, and should not be enforced.

As explained below, Monitronics should be held to have waived its right to ask for arbitration, because it has chosen to use the court system in order to gain a material advantage in the litigation. Monitronics could have asked the Georgia state court to enforce the alleged arbitration agreement, but instead removed the case to federal court and is now taking the position that plaintiff lacks Article III standing to pursue the case in the court it chose -- an argument unavailable in plaintiff's chosen forum. Monitronics has also used federal procedures to hedge its

bets as to venue by twice requesting that this action be transferred to West Virginia through the MDL proceedings.

Moreover, the arbitration clause itself is unenforceable. The "rules" the alleged contract references as governing the arbitration between plaintiff and defendant do not exist, and rather than selecting a neutral third-party arbitrator, the contract requires that a lawyer familiar with the security industry in the distant forum of Dallas, Texas conduct the secret arbitration. Under these circumstances, and as explained below, it would be unconscionable to dismiss this case in favor of arbitration

### A. Applicable law

In the event this court finds a contract exists between the parties, the next step is to apply conflicts of laws rules and Federal law to determine the validity and enforceable of the contract. "The FAA [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). The FAA's primary substantive provision provides:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. *See also Rent-A-Center*, 130 S. Ct. at 2776. "The FAA thereby places arbitration agreements on an equal footing with other contracts... and

requires courts to enforce them according to their terms... Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center*, 130 S. Ct. at 2776 (internal citations omitted).

When applying state contract law, Federal courts generally apply the choice of law rules of the forum state, in this case Georgia. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). Georgia follows the traditional, but minority, rule of *lex loci contractus*. *Id.* "Under this approach, '[contracts] are to be governed as to their nature, validity and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case ... the laws of that sister State will be applied....'" *General Telephone Co. of Southeast v. Trimm*, 252 Ga. 95 (1984). "In order to determine where a contract was made, the court must determine where the last act essential to the completion of the contract was done." *Id.*

Spot Security was located in Portland, Oregon and entered into agreements with Plaintiff when she was in Oregon to provide alarm monitoring services at Plaintiff's then Oregon address. *Hurst Decl.* at ¶¶ 5-6. The last act essential to the completion of the contract, its execution, took place in Oregon. *Id.* at ¶ 6. The contract itself was to be performed in both Oregon and Texas, with the premises to

be monitored located in Oregon along with the alarm equipment used to facilitate the monitoring.  Accordingly, applying Georgia's conflicts of laws analysis, this Court must apply Oregon law, to the extent it is not preempted by the FAA, to the resolution of these disputes.

### B. Defendant's Improper Ordering of its Motion to Dismiss should be Considered a Waiver of its Right to Arbitrate.

In this Circuit, "'[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right…' Waiver occurs when both: (1) the party seeking arbitration 'substantially participates in litigation to a point inconsistent with an intent to arbitrate'; and (2) 'this participation results in prejudice to the opposing party.' Prejudice exists when the party opposing arbitration 'undergo[es] the types of litigation expenses that arbitration was designed to alleviate.'" *In re checking Account Overdraft Litigation*, 754 F. 3d 1290, 1294 (11th Cir. 2014).

Defendant's motion to dismiss asks this court to rule on the merits of its limitations defense and seeks to compel arbitration if, and only if, this Court denies its motion on the merits. *Doc. 11-1*, p. 2 ("Second, assuming *arguendo* that the Complaint is not time-barred, Monitronics still is entitled to an Order compelling the parties to arbitrate").  This prejudices the Plaintiff and puts the court into a bit of a Hobson's Choice.  In order to determine whether the limitations provision is enforceable, the court would have to decide if the contract is unconscionable and

unenforceable by evaluating the contract as whole. *See Monitronics International, Inc. v. Veasley*, 323 Ga. App. 126 (2013) (noting that the trial court found a similar agreement unconscionable and unenforceable under Georgia law, but affirming on other grounds without reaching the question). If the court found the entire contract unconscionable and unenforceable in its contractual limitations analysis, then it would invalidate the arbitration clause. *See Vasquez-Lopez v. Beneficial Oregon, Inc.*, 152 P.3d 940, 953-54 (Or. App. 2007) (trial court may render an entire contract unenforceable rather than sever an unconscionable provision).

 The problem is this court *cannot* consider the unconscionability of the contract as a whole, but must apply the Supreme Court's FAA severability doctrine in determining whether to compel arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967). According to *Prima Paint*, this court can only consider the arbitration agreement in its analysis of a motion to compel arbitration. If the Court finds the arbitration agreement to be enforceable, it must then permit the arbitrator to determine to enforceability of the contract as a whole. *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440 (2006).

 If this court were to compel arbitration, an arbitrator sitting in Texas, as provided in the agreement, may apply Texas conflicts of law principles, which follow the majority rule set forth in the Restatement rather than the Georgia rule of *lex loci contractus*. *See Sonat Exploration v. Cudd Pressure Control*, 271 S.W.3d

228 (Tex. 2008). If the arbitrator found that Texas law applied, where Monitronics provided monitoring and the arbitration took place, then Texas law would void the provision. Tex. Civ. Prac. & Rem. Code § 16.070 ("[A] person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.").

Insofar as the Defendant asks this court to rule on a provision of the contract outside of the arbitration clause before determining whether to compel arbitration, Defendant is attempting to take two bites at the apple in a manner flatly inconsistent with the manner in which an agreement to arbitrate is supposed to be enforced under the *Prima Paint* severability doctrine.  If it wins here, no need to arbitrate, but if it loses, then let the arbitrator decide.  By asking the Court to rule on the agreement as a whole, Defendant has acted inconsistently with the right to arbitrate in a manner which has prejudiced the plaintiff by requiring him to prevail on the limitations issue twice.

Accordingly, Plaintiff requests this court find that Monitronics waived its right to arbitrate by seeking a ruling on the merits before seeking to compel arbitration.  In the alternative, Plaintiff asks this court to at least hold that Monitronics has waived its rights under *Buckeye Check Cashing Inc. v. Cardegna*,

546 U.S. 440 (2006) to have the arbitrator determine the unconscionability and

enforceability of the contract as a whole because the court must consider this issue

in addressing Defendant's merits argument.  Such a holding would be consistent

with the holding in *In re checking Account Overdraft Litigation* where the

Eleventh Circuit held that KeyBank waived its rights to have the arbitrator

determine arbitrability under an otherwise severable delegation clause.  754 F. 3d

1290, 1294 (11th Cir. 2014).

      **C.**     **Monitronics Course of Conduct has Waived its Right to Arbitrate.**

In addition to removing this case from state court in an attempt to eviscerate

plaintiff's standing to sue and seeking a ruling on the merits prior to attempting to

enforce arbitration, Monitronics has twice attempted to transfer this case to the

Northern District of West Virginia for inclusion in the multidistrict litigation over

its pervasive telemarketing calls. Despite the fact that it relied on its assertion of

Federal jurisdiction to remove this case, it flaunts that it wants this case to be

subject to a stay entered in West Virginia until the Supreme Court decides *Spokeo*

*v. Robbins* and *Gomez v. Campbell-Ewald*. *See Doc. 2-2*; JPML 2493, Doc. 247, P.

8, fn. 4 (attached).  However, there would be no reason for this case to be subject

to any stay if it were to be arbitrated, as arbitrators are certainly not limited by

Article III any more than state courts.  *Asarco Inc. v. Kadish*, 490 US 605, 617

(1989). Use of the federal court procedures to gain a tactical advantage represents a

material use of those court systems and a waiver of its right to invoke any

arbitration clause.

By seeking a ruling on the merits, a transfer for consolidated proceedings,

and a stay for Article III jurisdictional concerns, Monitronics has acted

inconsistently with an intent to arbitrate to the prejudice of plaintiff. *In re checking*

*Account Overdraft Litigation*, 754 F. 3d 1290, 1294 (11th Cir. 2014).

### D.   The AMA, and the Arbitration Clause, is Unconscionable.

Under Oregon law, "[u]nconscionability is 'assessed as of the time of

contract formation,' and the doctrine 'applies to contract terms rather than to

contract performance.'" *Bagley v. Mt. Bachelor, Inc.*, 340 P. 3d 27, 35 (Or. 2014).

"Unconscionability may be procedural or substantive." *Id.*

> Procedural unconscionability refers to the conditions of contract formation
> and focuses on two factors: oppression and surprise. Oppression exists when
> there is inequality in bargaining power between the parties, resulting in no
> real opportunity to negotiate the terms of the contract and the absence of
> meaningful choice. Surprise involves whether terms were hidden or obscure
> from the vantage of the party seeking to avoid them. Generally speaking,
> factors such as ambiguous contract wording and fine print are the hallmarks
> of surprise. In contrast, the existence of gross inequality of bargaining
> power, a take-it-or-leave-it bargaining stance, and the fact that a contract
> involves a consumer transaction, rather than a commercial bargain, can be
> evidence of oppression.
>
> Substantive unconscionability, on the other hand, generally refers to the
> terms of the contract, rather than the circumstances of formation, and
> focuses on whether the substantive terms contravene the public interest or
> public policy. Both procedural and substantive deficiencies—frequently in
> combination—can preclude enforcement of a contract or contract term on
> unconscionability grounds.

*Id.* at 35-36.  The Oregon Supreme Court has not decided whether both procedural *and* substantive unconscionability are required, or if only one will suffice to render a contract unenforceable.  *Id.* at fn 8.  However, the Oregon Court of Appeals has held that "both procedural and substantive unconscionability are relevant, although only substantive unconscionability is absolutely necessary. With that proviso, each case is decided on its own unique facts." *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 152 P.3d 940, 948 (Or. App. 2007).  The relevant question is whether the contract is unconscionable at the time of its formation, rather than as applied at the time of a dispute.  *Id.*

### 1.  The AMA, and the Arbitration Clause, is Procedurally Unconscionable

The AMA is a preprinted adhesion contract drafted by a commercial business and given to a consumer with no opportunity to negotiate the terms as part of a consumer transaction. *Hurst Decl.* at ¶¶ 7-9.  The most egregious terms, along with the arbitration clause, are hidden in the fine print on the reverse side of the document.  Accordingly, the contract has the hallmarks of oppression sufficient to show procedural unconscionability under the standard set forth in *Bagley* (supra).

With regard to surpise, the language of the contract is ambiguous and impossible to enforce because it requires that the arbitration "shall be conducted by the commercial rules of the Federal Arbitration Act."  The FAA does not have

18

"commercial rules" of procedure.  The agreement does not name an arbitrator, but requires that the arbitrator be "an attorney who is knowledgeable about the security industry[,]" without defining the extent of knowledge required.   For instance, is any attorney with a home alarm system capable of arbitrating or is the arbitration required to be conducted by an attorney who has specialized knowledge from working for or within the industry?  Plaintiff Hurst has no clue where to find an arbitrator in Dallas, Texas that is both neutral and meets this criteria. *Hurst Decl.* at ¶ 14; *See Inetianbor v. CashCall, Inc.*, 768 F. 3d 1346 (11th Cir. 2014) (refusing to enforce agreement where arbitration before the chosen forum was not possible and the forum was integral to the agreement); *Miller v. GGNSC Atlanta, LLC*, 323 Ga. App. 114 (2013) (refusing to enforce arbitration agreement naming NAF when neither the forum nor the chosen rules were available due to NAF's bias).

Finally, at least one court has already found a strikingly similar limitation of liability clause to the one in paragraph 5 of the AMA to be unenforceable due to its ambiguity.  *See Monitronics International, Inc. v. Veasley*, 323 Ga. App. 126 (2013).  This ambiguity, along with the terms being imbedded in fine print, meets the "hallmarks of surprise" necessary to show procedural unconscionability under Oregon law.  *Bagley* (supra).

### 2.  The Arbitration Clause is Substantively Unconscionable.

The substantive terms of the arbitration clause require that arbitration between a consumer in Oregon and a business in Oregon, Spot Security, for services to be provided at the consumer's home in Oregon to take place in Dallas, Texas.  There is no legitimate purpose for requiring that the arbitration happen in Dallas, except to make it costly and difficult for the consumer. The agreement does not name an arbitration forum for a consumer to file her claim; rather the consumer has to go to court, pursuant to 9 U.S.C. § 5, to appoint an arbitrator.  However, to do so the Court must find an attorney in Dallas, Texas knowledgeable about the security industry, rather than someone knowledgeable about the law pertaining to the underlying claims.  If this ambiguous phrase requires specialized knowledge beyond the general knowledge of anyone with an alarm system, an industry insider attorney as an arbitrator would certainly not be neutral.

In addition, the arbitration agreement includes a release from liability for punitive damages for future conduct.  In upholding a different arbitration clause, the Oregon Court of Appeals specifically noted that the absence of such a limitation is what made the agreement conscionable.  *See Motsinger v. Lithia Rose-Ft, Inc.*, 156 P.3d 156, 166 (Or. App., 2007) ("Equally relevant, however, is what the arbitration clause does *not* do. Most importantly, the arbitration clause does not impose any limits on the type or amount of recovery that can be awarded by the

arbitrator. It does not exclude punitive or statutory damages or preclude an award of attorney fees when otherwise provided by law.").

"Agreements to exonerate a party from liability *or to limit the extent of the party's liability* for tortious conduct are not favorites of the courts but neither are they automatically voided. The treatment courts accord such agreements depends upon the subject and terms of the agreement and the relationship of the parties." *Bagley*, 340 P. 3d at 37 (*emphasis added*). "'Where the defendant is... charged with a duty of public service, and the agreement to assume the risk relates to the defendant's performance of any part of that duty, it is well settled that it will not be given effect. Having undertaken the duty to the public, which includes the obligation of reasonable care, such defendants are not free to rid themselves of their public obligation by contract, or by any other agreement.'" *Id.* Defendant "has the expertise and opportunity to foresee and control hazards of its own creation… and to guard against the negligence of its employees. Moreover, defendant alone can effectively spread the cost of guarding and insuring against such risks among its many [customers]." *Id.* at 40.

Finally, the arbitration requires complete confidentiality over the proceedings.  Although the court in *Vasquez-Lopez v. Beneficial Oregon, Inc.* did not find issue with the confidentiality provision in that case, it did so because the confidentiality requirement did "not apply to facts, parties, arbitrators' identities,

arguments, or outcomes (in the sense of who wins and who loses); rather, it applies only to the amount of the award." 152 P.3d at 953.  In addition, the court in *Vasquez-Lopez* found that the confidentiality provision in a financial services contract provided benefit to the consumer regarding her financial affairs.  *Id.*  Ms. Hurst testifies that she gains no benefit from the confidentiality of any proceedings with Monitronics. *Hurst Decl.* at ¶ 12.

### 3.  The AMA is Substantively Unconscionable.

In addition to the arbitration clause, the AMA as a whole is permeated throughout with substantive unconscionability.  Paragraph 5 contains a release of the Company from liability followed by a damages limitation of $1,000.00.  Such release and damages limitation is unconscionable for the same reasons as the release in *Bagley* was unconscionable. 340 P. 3d 27 (Or. 2014); *See also Monitronics International, Inc. v. Veasley*, 323 Ga. App. 126 (2013) (noting that the trial court found similar provision unconscionable under Georgia law).

Paragraph 5 becomes even more unfair when combined with the other provisions in the contract, including the arbitration clause.  According to the contract, claims against the Company must be brought within 1 year (paragraph 12), must be brought in Dallas, Texas before an industry attorney (paragraph 13), and damages are capped at $1,000.00 (paragraph 5), excluding punitive damages not recoverable at all (paragraph 13).  While the AMA attempts to limit the

company's liability in paragraph 5 because it is not "an insurer," it then requires in paragraph 10 that the consumer insure the company if a cohabitant or visitor in her home were to suffer the same fate as Velma Veasley. *Monitronics International, Inc. v. Veasley*, 323 Ga. App. 126 (2013).

## V.    Plaintiff Requests Discovery and a Trial by Jury.

In the event this court cannot rule summarily on the facts as presented, Plaintiff requests that she be permitted to conduct discovery on the issues of arbitrability, including on whether it is possible to find a neutral arbitrator that is an attorney in Dallas, Texas with sufficient knowledge of the security industry to arbitrate under the commercial rules of the FAA.  *See Inetianbor v. CashCall, Inc.*, 768 F. 3d 1346 (11th Cir. 2014).  Upon the conclusion of discovery, plaintiff requests a trial by jury on all issues so triable pursuant to 9 U.S.C. § 4.

## VI.   Conclusion.

For the forgoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and to Compel Arbitration.

## CERTIFICATE OF COMPLIANCE WITH LR 5.1B & 7.1D, NDGa.

Pursuant to LR 7.1D, NDGa., I certify that this document has been prepared with one of the font and point selections approved by the court in LR 5.1B, to wit:

[x]    Times New Roman, 14 point; or

[ ]      Courier New, 12 point.


 Respectfully submitted,


                              SKAAR & FEAGLE, LLP

                              by:      /s/ Justin T. Holcombe
                                       Justin T. Holcombe
                                       Georgia Bar No. 552100
                                       jholcombe@skaarandfeagle.com
                                       P.O. Box 1478
                                       331 Washington Ave.
                                       Marietta, GA 30061-1478
                                       770 / 427-5600
                                       404 / 601-1855 fax


                                       Alexander H. Burke, *pro hac vice*
                                       BURKE LAW OFFICES, LLC
                                       155 N. Michigan Ave., Suite 9020
                                       Chicago, IL 60601
                                       (312) 729-5288
                                       (312) 729-5289 (fax)
                                       ABurke@BurkeLawLLC.com

                                       ATTORNEYS FOR PLAINTIFF